STRACHN *v.* FOSS.

The grantor of premises occupied as his home, is estopped by the covenants of his deed from maintaining a bill in equity for the assignment of a homestead to himself therefrom.

During the lifetime of the husband and father, who has conveyed with covenants the premises occupied as the family home, neither his wife or minor children, claiming through and identified with him, are entitled to have a homestead assigned and set out therefrom, against the covenants of his deed.

The right of homestead does not exist against a mortgage made to secure a debt existing prior to January 1, 1852, or a renewal of such debt, although the mortgage be executed subsequent to that date.

Upon a bill in equity, brought to secure the assignment of a homestead, it may be shown, to defeat the bill, that the note secured by the mortgage against which the homestead is claimed, although dated subsequently, was given in renewal of a debt existing prior to January 1, 1852.

BILL IN EQUITY, brought by William Strachn, and his two minor children, John William and Emma Jane, by their guardian, asking that a homestead of the value of five hundred dollars might be set off and assigned to them in the premises described in the bill, situate in Strafford, in this county. It alleged that, on the 26th day of April, 1852, and for a long time previous thereto, said William Strachn owned and occupied said premises as his family homestead; that he had then no wife, but the other plaintiffs then were and still are his minor children; that on that day he made and executed to the defendant a warrantee mortgage of the premises to secure the payment of his note of the same date; that said deed did not have the consent of the judge of probate for this county indorsed thereon; that said mortgage was still in full force, and had never been discharged; that it was not made to secure the purchase money of the premises conveyed by it; and that the defendant had brought a writ

of entry to foreclose said mortgage, which was still pending ; and prayed that the further prosecution of said suit might be enjoined during the pendency of the bill, that a homestead might be assigned, and for further relief.

The defendant's answer admitted substantially all the facts charged in the bill, but alleged, in avoidance thereof, that the note, which the mortgage described in the bill was made to secure, had been given in renewal of a pre-existing debt due the defendant from the mortgagor more than two years before the date of the mortgage, and that one of the plaintiffs, Emma Jane Strachn, was not, at the time of filing the bill, resident upon or in the occupation of the alleged homestead premises, but was working as a domestic in Dover, &c.

By agreement of the parties, the case was submitted for the decision of the court, upon the bill and answer.

*George C. Peavey,* for the plaintiffs.

*C. W. Woodman,* for the defendant.

FOWLER, J.* We have just decided, in the suit at law between these parties, that the plaintiff, William Strachn, is estopped by his deed to prosecute this bill to invalidate the title conferred thereby. *Foss* v. *Strachn,* 42 N. H. 40; and the only remaining question is, whether his minor children are entitled to maintain it, upon the facts set forth in the bill and answer.

There can be no doubt that the proceeding in equity is a proper mode of enforcing the right of the minors to the homestead, if they are entitled to have one assigned to them under all the circumstances of the case. *Gunnison* v. *Twichel,* 38 N. H. 62. Nor does the absence of one of them from the property prevent her from availing herself of her right, if she has one that can now be enforced. *Atkinson* v. *Atkinson,* 36 N. H. 436.

* Doe, J., did not sit.

The first question is, whether the mortgage, being made to secure the renewal of a debt in existence before the passage of the homestead act, any right of homestead exists against it? We think it quite clear there does not.

By the first section of the homestead act, passed July 4, 1851, its provisions, so far as exemption from attachment or levy or sale upon execution are concerned, were expressly limited to executions founded upon judgments rendered on any cause of action accruing after the first day of January, 1852; and although nothing is said as to the time when, or the debts against which the remaining provisions of the act should take effect, it can not be doubted that the intention of the legislature was to make the whole operation of the act prospective, and to provide that the right of homestead exemption, in any case, should exist only as against debts incurred and liabilities contracted after that date. There can be no doubt whatever, that if the defendant, Foss, had recovered a judgment upon a note secured by the mortgage, he might have shown that note to have been given in renewal of a pre-existing debt, so that the judgment would have been rendered for a cause of action existing prior to January 1, 1852, and no right of homestead would have existed against it. A question, similar to the one which would have arisen in such a case, has been several times adjudicated in Pennsylvania, under a law similar in its provisions to our homestead act, and uniformly been decided in accordance with this view.

The Pennsylvania statute exempted certain property from liability to levy upon executions issued in judgments recovered for debts contracted after July 4, 1849. In *Reed* v. *Defebaugh*, 24 Penn. 495, it was held by the Supreme Court of that state, that a note, dated October 21, 1851, but given for the price of goods sold and delivered prior to July 4, 1849, was not a debt contracted after the act took effect, so that the exemption would apply to

the execution issued in the judgment rendered upon it, on the very reasonable and clearly apparent ground that the debt was contracted when the goods were sold. Although the objection was taken that the original indebtedness was merged in the note, which was under seal, the court overruled it, and held that the taking of a security of a higher nature did not destroy the original debt, so as to bring the note within the operation of the statute.

The same doctrine was also reaffirmed in *Michael Weaver's Estate*, 25 Penn. 434, where it was decided that a judgment on a note, dated November 29, 1852, but given for one then surrendered, dated prior to July 4, 1849, was to be regarded as rendered upon a debt existing prior to July 4, 1849, and so not within the operation of the statute. See also 19 Barb. 160; 31 Penn. 225; 32 Penn. 276; 34 Penn. 256.

If, then, the note secured by the adult plaintiff's mortgage is to be regarded as a cause of action accruing prior to January 1, 1852, no homestead exemption could have existed in relation to an execution issued in a judgment rendered upon it, and the homestead real estate of the adult plaintiff might have been levied upon to satisfy such execution. But, by the sixth section of the homestead act, the husband and father is forbidden to convey or alienate only the property in which the homestead exemption exists before assignment, or the homestead itself after assignment (*Gunnison* v. *Twichel*, 38 N. H. 62), so that the prohibition did not apply to the adult plaintiff's real estate as to this mortgage debt, because no homestead exemption existed therein as to that debt. Consequently, the plaintiff was at full liberty to execute the mortgage, and by his deed the unincumbered title to the land passed.

We are, therefore, of opinion that the minor plaintiffs can not maintain their bill for this reason.

But there is still another sufficient reason why, in our

judgment, neither a debtor's wife or his minor children can, during his lifetime, have a homestead assigned to them, against the covenants of his deed, in property where the homestead right clearly exists. The wife is in law identified with her husband; the father is entitled to the services and bound to maintain his minor children; and if the wife or minor children are entitled to a homestead, they are thus entitled only as claiming under and through the husband and father, by virtue of his title to the demanded premises. But the husband and father is estopped by his deed to claim any thing in the homestead premises; the general doctrine in relation to estoppels is well established, that they bind not only the party, but his privies, and all who claim through him. To deny the homestead right to the husband and father, on the ground of estoppel, and give it to his wife or minor children, during his lifetime, would practically make one decision neutralize the other, as well as violate the long settled doctrine of estoppels. We are, therefore, of the opinion, that during the life of the husband and father, neither his wife or minor children are entitled to a family homestead against the covenants of his deed, even when, after his death, they might be thus entitled.

*Bill dismissed, with costs.*