Mar. 22,
1876.                    PILLSBURY v. ELLIOTT.

*Construction of deed.*

The plaintiff and her mother, Sarah Frazier, were in occupation of a farm which had belonged to the plaintiff's father, out of which dower had been assigned to the mother, it appearing that the whole farm, including dower, was then occupied in common by the plaintiff and her mother. The plaintiff, by deed of warranty, conveyed to the defendant " a certain tract of land situated in said town, being all the farm, pasture, and woodland used and occupied by us in said town, with the buildings thereon; also, all right, title, and interest which we now have, or which may here_ after accrue to us, in the dower or thirds of Sarah Frazier, except a certain piece of woodland containing about twenty-five acres, situated on the road beyond the Langley saw-mill, meaning all the land we own in said town excepting the above-named woodland; also, what reversionary rights may accrue to us from said Sarah Frazier's dower." The plaintiff afterwards purchased the reversionary right of a co-parcener in the dower. *Held*, that she was not estopped to claim such reversionary right against the defendant by her deed to him.

FROM MERRIMACK CIRCUIT COURT.

PETITION FOR PARTITION. The petitioner alleges that she is the wife of Luke Pillsbury; that Sarah Frazier, deceased, was in her lifetime seized, as widow of Levi Frazier, of certain real estate as tenant in dower, which real estate was set out to her by metes and bounds; that the same was set out to her October 28, 1858; that the petitioner and one Julia Ann Currier, daughters of said Levi Frazier, were seized as tenants in common of the said premises, subject to said right of dower; that, on the twenty-fifth day of March, 1874, the said petitioner, by her deed of that date, conveyed to the defendant, for a valuable consideration, her undivided share of said premises, subject to said right of dower,—and on the same day the said Sarah,

then living, leased to the defendant the whole of her estate in dower for the term of her natural life, and delivered him possession thereof under said lease; that, on the fifth day of May, 1875, said petitioner purchased of the heirs of said Currier their undivided moiety of said dower, they having derived title to the same by inheritance as heirs of their mother; that the petitioner is now the sole and lawful owner of said undivided moiety of said dower; that on the first day of January, 1875, said estate in dower terminated by the death of said Sarah; and that she is now desirous of having her share thereof assigned to her, and praying for partition.

The defendant pleaded that he was sole seized of the demanded premises, and that he was not tenant in common with the plaintiff. The evidence tended to show that the premises were part of the farm of Levi Frazier, deceased; that the plaintiff, her husband, and said Sarah, at the time of the conveyance to the defendant, were living upon the farm, and that the same was occupied in common by the plaintiff and her mother.

The description in the deed from the plaintiff to Elliott was as follows: "A certain tract of land situated in said town, being all the farm, pasture, and woodland used and occupied by us in said town, with the buildings thereon; also, all right, title, and interest which we now have, or which may hereafter accrue to us, in the dower or thirds of Sarah Frazier, except a certain piece of woodland containing about twenty-five acres, situated on the road beyond the Langley saw-mill, meaning all the land we own in said town, excepting the above-named woodland; also, what reversionary rights may accrue to us from said Sarah Frazier's dower."

The deed contained full covenants of warranty, and the husband of the petitioner joined with her in making the conveyance; but there was no evidence that he had any rights, except as her husband.

If, upon the foregoing facts, the court shall be of opinion that the plaintiff is entitled to partition, a committee is to be appointed; but if she is not entitled to partition, then the petition is to be dismissed.

The questions of law arising on the foregoing case were transferred to the superior court by STANLEY, J.

*Norris*, for the plaintiff.

*Shirley* (with whom was *Barnard*), for the defendant.

CUSHING, C. J. It appears from the case that the petitioner was, at the date of the deed from her and her husband to the defendant, the owner, by inheritance and purchase, of two third parts of the farm of her father, Levi Frazier, and also the owner of one undivided half of the reversion of her mother's dower. March 25, 1874, she conveyed to the defendant all the land they then owned in the town, including her reversionary right. The terms used in the description of the deed were,—"A certain tract of land situated in said town, being all the

farm, pasture, and woodland used and occupied by us in said town, with the buildings thereon; also, all right, title, and interest which we now have, or which may hereafter accrue to us, in the dower or thirds of Sarah Frazier, except a certain piece of woodland, containing about twenty-five acres, situated on the road beyond the Langley saw-mill, meaning all the land we own in said town, excepting the above-named woodland; also, what reversionary rights may accrue to us from said Sarah Frazier's dower."

It is true, that the case finds that the farm, including the dower, was used and occupied by the petitioner and her husband and the dowager in common, and this might seem to lead to the inference that by "all the farm now used and occupied by us" was intended all their part and the dower besides. This construction is negatived by the fact that they go on afterwards, and expressly convey their interest in the land held as dower by Sarah Frazier, and all reversionary rights that shall accrue to them. These last words were probably suggested by the momentary doubt in the conveyancer, whether their interest in the reversion was a vested interest, or one which would accrue at the death of Sarah, and seem to have been used in reference to that idea. This, therefore, is the construction I incline to put upon the terms of that description. The word *accrue* was used to prevent the possibility of any doubt being raised by the suggestion, if it should be made, that they had no interest susceptible of being conveyed until it had accrued by the death of Sarah. This I believe to be the true construction of this deed, and that it conveyed and intended to convey the rights they then had, whether considered as vested or contingent, which might accrue at the death of Sarah.

If this be the true construction of the deed, the plaintiff will be entitled to hold to her own use all that part of the land which was inherited by the heirs of Jane Currier, and which she purchased of them.

It is undoubtedly true, that if this plaintiff really conveyed by her deed of warranty land which she did not own, and afterwards acquired a title to that land, she would be estopped to deny that she had the title at the time of her conveyance; or, in the quaint language of the common-law conveyancers, her conveyance with warranty would create against her an estoppel which would be practically barren and empty until the title afterwards acquired by her should "feed the estoppel."

If my construction of the deed is right, no such effect can be produced in this case, because, as her deed does not purport to convey the reversionary interest of Jane Currier and her heirs, there is no estoppel to be fed by it.

LADD, J. That the defendant, at the time he accepted the deed of March 25, 1875, did not understand its true meaning to be what he now contends is its legal construction, seems to be shown by the fact that, on the same day, he took from Sarah Frazier a lease for her life of that part of the same premises set off to her for dower—that is, an

assignment of her dower. In the face of this fact, his present contention, that he bought and paid for the whole farm except the twenty-five acres woodland, does not impress me with much force. The question, however, is not what the parties intended to do, but, What did they do?—what intention did they express in the deed? That is to be gathered from the words of the deed, read by the light thrown upon it by the condition of the subject-matter to which it applied. The deed is very inartificially drawn. How stood the title at the time of its execution? As I understand the case and the admissions of counsel, the plaintiff was sole seized in fee of the whole farm, except that part set off to her mother for dower. As to that portion, she was seized in fee as tenant in common, or coparcener, with her sister, Julia Ann Currier, of the remainder after the life estate of their mother. It does not admit of doubt, in my mind, that the actual intention of the grantors was to convey to the defendant just what the plaintiff had in the premises, and nothing more. If there had been a different intention; if the bargain had been, that the plaintiff should buy in the interest of her sister in the reversion of dower, and that such interest should thereupon pass by operation of the deed to the defendant,—it passes belief that some more definite and clear expression of such bargain would not have been inserted in the deed, or been provided for by a separate instrument.

Let us look at the deed, and see whether it expresses what I am thus compelled to believe was the actual intention of all the parties to it, or something more.

The first clause in the description is, "all the farm, pasture, and woodland used and occupied by us in said town." The plaintiff, with her husband and mother, was in the common occupation of the whole farm; and if this clause stood alone, I should think the defendant's construction would be correct. But there is more in the description, that must not be lost sight of. First, the clause,—"also, all right, title, and interest which we now have, or which may hereafter accrue to us, in the dower or thirds of Sarah Frazier;" second, the exception of twenty-five acres woodland; third, the declaration of what the parties meant to convey, "meaning all the land we own in said town, excepting the above-named woodland." Two things are here made plain, namely,—The parties intended to except twenty-five acres from the farm they were using and occupying; and they intended to convey what land they owned in town, except said twenty-five acres, and no more. What was the clause about reversion of dower inserted for, and repeated as the closing words of the deed? It may be that this is a question more easily asked than answered. So far as regards the first part of it—"also, all right, title, and interest which we now have in the dower or thirds of Sarah Frazier"—I cannot conceive any view in which that adds or subtracts anything from the description. "Or which may accrue to us;"—what does that mean? The defendant says its meaning is broad enough to cover the reversion of dower which was in Julia Ann Currier at the time of the deed, and which the plaintiff

afterwards bought. But the trouble with this is, that he must have known, at the time he took the deed, that it meant no such thing; for the grantors do succeed in saying, in words that are plain to the apprehension of anybody, that the meaning of the description is, all the land they own in town excepting the woodland. They did not own this reversion of Julia Ann Currier, and had not a particle of interest in it any more than in the farm of their next neighbor. Besides, the words, " or which may hereafter accrue to us," are not apt words to express the idea of obtaining by bargain and sale. To buy, pay for, and receive a deed, implies action on the part of the purchaser : to come into possession or ownership of a thing by having it accrue, does not imply action by the recipient.

It is probable that the person who wrote this deed, knowing the situation of the title and what the parties desired to do, had it in his mind that it was necessary to say something in order to provide for the passing of the whole estate when the life interest of Sarah Frazier fell in. The words employed for that purpose are doubtless open to criticism ; but I think it is impossible to give them the effect contended for by the defendant, in the face of the express and plain declaration that the whole meaning is, to convey the land owned by the plaintiff in town.

SMITH, J. The question presented is one of the construction of a deed. At the date of the plaintiff's conveyance to the defendant, she was sole seized of two thirds of the tract of land described in her deed. The other third had been set out to her mother as dower in the estate of her late husband. The plaintiff was also seized of an undivided half of the reversion in the piece in which her mother had her dower, and her sister, Mrs. Currier, was seized of the other undivided half of the reversion. On the twenty-fifth of March, 1874, the plaintiff, by warranty deed, conveyed said premises to the defendant by the description set forth in the petition.

On the first day of January, 1875, the estate in dower terminated by the death of Sarah Frazier ; and on the fifth day of May, 1875, the plaintiff took a conveyance from the heirs of her sister, Mrs. Currier, then deceased, of their interest in the undivided half of said reversion ; and this petition is brought to compel a partition of the piece which had been set out to her mother as her dower. Did the plaintiff, by her deed of March 25, 1874, convey to the defendant the whole estate in the tract of land embraced in her deed, so that the interest which she subsequently acquired from the heirs of Mrs. Currier, in May, 1875, would enure to the benefit of her grantee, upon the ground that she is estopped by her covenants from setting up against her grantee the after acquired title ? *Strachn* v. *Foss*, 42 N. H. 43. The answer to this question depends upon the fact whether the language used in the latter part of the description of the premises was intended to limit or explain what precedes it, or is inconsistent with and repugnant to the preceding description. *Drew* v. *Drew*, 28 N. H. 489.

The description—"A certain tract of land situated in said town,

being all the farm, pasture, and woodland used and occupied by us in said town, with the buildings thereon "—is definite and clear. No doubt can be raised that this would convey the whole estate in the farm, &c., occupied by the grantor, as to her, including her interest in the reversion of her mother's dower, without any mention of that interest; that is, although as to her mother and her sister, Mrs. Currier, such description would not affect their interests in the farm, yet, as to the grantor purporting to convey the whole estate, it would operate to convey whatever interest she had, and she would be estopped to deny that it did not convey the whole estate.

The next section of the description is in these words: " also, all right, title, and interest which we now have or which may hereafter accrue to us in the dower or thirds of Sarah Frazier, except a certain piece of woodland," &c., " meaning all the land we own in said town excepting the above-named woodland." It is clear this includes nothing but what passed by the language used in the preceding part of the description. The interest which the grantor then had in the dower of her mother, was an undivided half in the reversion thereof. The only sense in which this interest might be said to accrue to her afterwards was, that she would become seized of an unincumbered estate in fee in an undivided half of the piece set out as dower, upon the death of her mother. So much was certain, for, as death is certain, if the plaintiff should survive her mother, she would take a moiety in the dower tract in fee simple, or, in case of her decease, her heirs would so take. But the language—" or which may hereafter accrue to us in the dower or thirds of Sarah Frazier "—the defendant contends is comprehensive enough to cover any interest which the grantor might acquire in said dower tract by purchase. The remainder of the description, which is, " also, what reversionary rights may accrue to us from said Sarah Frazier's dower," merely explains what precedes it. What were these reversionary rights which might accrue to her from her mother's dower? She had already said she included in her grant all the interest which she then had, or which might thereafter accrue to her " in the dower or thirds" of her mother. If she intended something more, why were not apt words used to express her intention ? If she intended the interest of her sister, Mrs. Currier, in the reversion, it was an interest which she could acquire only by purchase. Her sister's interest was certainly a " reversionary right," but was a right belonging to the sister, and which the plaintiff did not own at the time of her conveyance to Elliott. It is certain that her sister's reversionary right could " accrue " to her only by purchase. Title to real estate cannot be said to " accrue " by purchase. It is rather " obtained " by purchase, while title accrues to a person by the silent operation of law.

It may be asked, Why should she purchase in the reversionary interest of her sister if it would enure to the benefit of her grantee ? She had qualified her conveyance by expressly stating she only meant to convey " all the land we own in said town," except the twenty-five acres woodland. Her covenants of warranty, then, could only apply to

what she conveyed, and there was no occasion for her on that ground to purchase in the only outstanding interest in the land after the death of her mother.

I am of the opinion that the petition can be maintained. According to the provisions of the transferred case, a committee must be appointed to make partition.

*Case discharged.*