WILLS v. CUTLER & a.

A promise by B to C that he will pay him a debt due from E if he will remain in B's employment is not within the statute of frauds, and no writing is necessary to its validity.

Work and service always afford sufficient consideration for a promise, when rendered at the request of the promisor.

An accepted proposal made to the workmen in a foundry collectively, by a partner therein, that if they will go to work his firm will pay them the amount due from a former proprietor, is a promise to each of them individually, upon which separate actions only will lie; and no demand of payment is necessary before suit.

It is no objection to such a promise that the sum due to each workman is not ascertained at the time, nor that their number is unknown.

In an action against a firm to enforce a liability incurred by one partner in respect of its regular business, it is not incumbent on the plaintiff to show the assent of the other partners.

Assumpsit. Facts found by a referee. In 1880, Otterson & Co. were carrying on business in an iron foundry at Nashua, and in December of that year they became embarrassed from want of funds; and thereupon they made a sale and transfer of their business and property to the defendants. At that time there were about thirty workmen in the foundry, who had been at work for a considerable time, and some of them for several years previously, in the same foundry, under its proprietors for the time being; and at the time of the sale there were due to those workmen arrears of pay for one half of their daily wages in November, and for all of their wages previously in that month of December. When the sale, etc., became known to the workmen a few days after, they were dissatisfied, and were unwilling to continue work until some satisfactory arrangement was made to make sure to them the pay for their future work, and also of the amount of the arrears of pay due to them, as above mentioned; and therefore they quit work.

Thereupon, a short time afterwards, a meeting was had at the foundry, at which Mr. Reed, one of the defendant firm, and the plaintiff and most of the other workmen were present. The reason why the workmen stopped work, and what they desired before resuming, as above mentioned, were then stated, and thereupon Mr. Reed made this proposition to the workmen,—that "if they would go to work again, as before, the defendants would pay them the same wages as they had been receiving, payments to be made at the end of each week, and also the amount of the arrears due them for November on the 15th of January, and one half of the amount of the arrears for December on the 15th of February, and the other half on the 15th of March following." After this propo-

sition had been made by Mr. Reed, inquiry was made of him if the firm were willing to put the agreement in writing; and he replied that they were, and they would have it put in writing, and signed by them, and sent to Nashua in a day or two, so that the workmen also could sign. But this was not subsequently done by the defendants, and no reason was given by them to the workmen for not doing it. The proposition made by Mr. Reed, with the arrangement relative to its being afterwards put in writing, was satisfactory to the workmen, and accepted by them, and Mr. Reed then so understood. On the following morning the workmen went to work again accordingly, and continued work for five days, when it was again interrupted, as hereinafter stated.

The referee finds as follows on the particular points mentioned: That the agreement between the parties became complete on the acceptance of the proposition at the meeting, as above stated, and that the arrangement relative to the subsequent putting it in writing, etc., was not an essential part and condition of the agreement itself; that the defendants were general partners, without any written articles of copartnership, in a business which included the operation of iron foundries, as in this case, and therefore Mr. Reed, in law, under the circumstances, had authority to make the agreement on behalf of the firm; that the defendants were desirous of having the work go on in the foundry, and the proposition was made by Mr. Reed for the purpose of inducing the workmen to go to work again; that the workmen were desirous of having the employment, if made satisfied with regard to pay, and that the considerations of the agreement were such as appear and would be implied under the circumstances; that the names of the workmen were not stated at the time when the agreement was made, but that it was intended and understood to include those present at the meeting, and the few who may have been absent at the time, if they so desired, and that the amount of the wages in arrears to be paid to each, in the aggregate to all, were not then specified, except so far as above mentioned; and that if Mr. Reed acted in making said agreement upon any false information as to the amount due to the workmen, there was no fault on the part of the workmen in that matter, and they had no knowledge of it.

When the pay for the five days' work done by the workmen, as above mentioned, became payable, according to the agreement, the defendants offered to pay the same to the workmen on their signing a receipt which had been prepared by the defendants, and was then presented for that purpose. But the workmen objected to the form of the receipt on the ground that the terms of it might bar or prejudice their claims against the defendants, under the agreement, relative to the arrears of pay. The defendants refused to pay without their signing the receipt; and thereupon, soon afterwards, on the same day, the workmen, being apprehensive that

otherwise they might lose their pay, commenced suits against the defendants therefor, and had attachments made of the defendants' property in the foundry. And the result was that by those attachments the work at the foundry was again stopped, the officer retaining charge of the property, and subsequently the defendants made payment of the wages due for the five days before mentioned.

The referee finds as follows on these points: That the objection made by this plaintiff and other workmen to the form of the receipt, on the ground stated, was reasonable and proper; that the defendants' refusal to pay, without their signing it, was wrongful; that there was cause for the apprehensions of the workmen with regard to their pay; and the commencement of the suits and attachments of the property were legal and justifiable under the circumstances; and therefore that those proceedings did not constitute or operate, in law, as any breach or recision of the agreement on the part of the workmen, so as to constitute a defence to the now pending actions, or entitle the defendants to any allowance for damages therein.

*H. B. Atherton*, for the plaintiff.

*A. F. Stevens* (with whom were *Allen, Hemmenway & Savage*, of Massachusetts), for the defendants. I. Reed's promise was within the statute of frauds. All the labor performed by the plaintiff for the defendants has been paid for in full. The general rule is, that a verbal promise to pay the debt of another is within the statute, if made to the creditor. To this rule there are exceptions, but the promise set up by the plaintiff does not fall within any of them.

II. There was no sufficient consideration for the promise. The only consideration alleged is the consent of the plaintiff to go to work for the defendants for the current wages which he had been receiving, and which have since been paid to him. No time was stipulated. No binding contract was made. The plaintiff surrendered nothing, gave up nothing, relinquished nothing. In fact, he was benefited by the arrangement, instead of being prejudiced or suffering any inconvenience by it. He acquired, instead of surrendering. The debt against Otterson & Co. still existed, and does now. He waived no lien or remedy against the debtors or their property. *Robinson* v. *Gilman*, 43 N. H. 485; *Lang* v. *Henry*, 54 N. H. 57; *Nelson* v. *Boynton*, 3 Met. 396; *Furbish* v. *Goodnow*, 98 Mass. 296; *Ames* v. *Foster*, 106 Mass. 400; *Gill* v. *Herrick*, 111 Mass. 501. These authorities amply sustain the position of the defendants, that the promise is within the statute.

III. The action cannot be maintained, the promise not being to the plaintiff individually; not being for a specific sum, but for an uncertain, unliquidated amount due to an indefinite number of persons not named; and no demand having been made before suit.

*Lang* v. *Henry, supra; Butterfield* v. *Hartshorn,* 7 N. H. 349; *Warren* v. *Batchelder,* 16 N. H. 580; *Dow* v. *Clark,* 7 Gray 198.

IV. The contract relied upon by the plaintiff was not completed. According to the report it was to be reduced to writing and signed by the parties; and the finding of the referee upon that point was error in law. The arrangement as to putting it in writing was an essential part of the agreement.

V. Mr. Reed as one of the partners had no authority to guarantee the payment and bind the firm by such a promise, and it was incumbent on the plaintiff to show the assent of the other partner. One partner has no implied power to bind his firm by a contract of suretyship. Such a contract is not ordinarily within the scope and purpose of a partnership, and the burden of proof to show assent of all is on the plaintiff before the firm can be charged. *Kidder* v. *Page,* 48 N. H. 383, and authorities there cited. The referee held otherwise as matter of law, thereby depriving us of the opportunity to show the dissent of the other partner. The law seems now to be settled, both in England and in America, that one partner is not authorized to bind the partnership by a guaranty of the debt of a third person without a special authority for that purpose, or one to be implied from the common course of the business or the previous course of dealing between the parties, unless the guaranty be afterwards adopted and acted upon by the firm. Collyer Part. (Perkins's ed.), *s.* 421.

Guaranties of the debts of others, and notes or bills of exchange made or endorsed for the accommodation of others, or as surety for others, are out of the scope of the business of a trading firm. *Sweetser* v. *French,* 2 Cush. 310.

The referee finds, as matter of law, that Mr. Reed had authority to bind the firm to the payment of the debts of another, because theirs was a business which included the operation of iron foundries. There was no more reason for holding, as matter of law, an implied authority to guarantee, or assume to pay, or become surety for the payment of the debt of a third person, in the case of a firm operating foundries, than in the case of a firm operating a line of stages, a shoe factory, or a dry goods or a grocery store. According to all the authorities the prohibition is general, and the burden of proof is on the plaintiff. The case shows the defendants to be general partners without any written articles of agreement, thus excluding the presumption of an authority, and leaving the case to be governed by the principle so generally recognized by the authorities.

BLODGETT, J. While it is impossible to reconcile all the decisions upon that branch of the statute of frauds pertaining to the promise of one person for the debt, default, or miscarriage of another, the decision of this case, so far as it relates to the statute, only requires the application of well settled principles.

1. The practical effect of Reed's promise to the plaintiff and the other workmen was to pay them a bonus for their labor in order to secure it. It was an absolute engagement to pay them the wages due from the old firm, provided they should go to work for the defendants at the same wages they had been receiving from that firm. The plaintiff and his associates assented to the condition, and having performed it the defendants' liability became original and absolute, and therefore not within the operation of the statute. The facts bring the case exactly within the principle stated and approved in *Allen* v. *Thompson*, 10 N. H. 32, and *Britton* v. *Angier*, 48 N. H. 420, that "where a promise to pay the debt of another is founded upon a new consideration distinct from and independent of the debt, and one which passes between the parties to the new contract, the case is not within the statute of frauds, and no writing is necessary to the validity of the promise."

2. There was a sufficient consideration for the promise. It is of course true that a mere naked promise to pay the existing debt of another without any consideration is void; but it is held in numerous cases that where the leading object of the defendant in agreeing to pay or answer for the third party's default is to benefit himself, the statute does not apply. The important case of *Emerson* v. *Slater*, 22 How. 28, affords a good illustration. The plaintiff Emerson had been employed by a railroad company to build its bridges, and the company failing to make payment as agreed, he refused to go on. The defendant was a large stockholder in the road, and had leased to the company a large quantity of railroad iron, and, as security for payment, held an assignment of the earnings of the road until payment was made him in full. The company itself was insolvent, and the road could not, of course, be operated until the bridges were completed. Whereupon the defendant orally promised to pay the plaintiff if he would go on and complete them, which he did. Upon the defendant's refusal to perform his promise, suit was brought, and the court held the promise to be valid, laying down the rule that "whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute." Tested by this rule, the promise of these defendants was valid, because the facts unmistakably show that their object was to subserve their pecuniary and business purposes by retaining the workmen, so that there might be no interruption in operating the foundry. But, in our opinion, it may well be doubted whether the object actuating a promise can be made the test of its legal obligation, and we attach no importance to this consideration. For whatever the object of the defendants may have been, the valuable experience and skilled labor of the workmen in putting into operation and carrying on the suspended foundry, from which the defendants

derived a benefit not before enjoyed, and which accrued directly to themselves, were a sufficient consideration for their promise. And apart from this, work and service always afford sufficient consideration for a promise when rendered at the request of the promisor.

Holding the promise valid, it is unnecessary to consider the objection that as against Otterson & Co. the plaintiff's debt did not become extinguished by his acceptance of the defendants' proposal, for if the objection is true (see *Warren* v. *Batchelder*, 16 N. H. 587), it does not follow that this action will not lie, because there are many cases in which a plaintiff may not have discharged his original debtor, and yet the promise be good without writing; its object and character being, as here, other than that of guaranteeing the debt, though the discharge of the debt may be incident to the performance of the promise. Browne St. Fr. (4th ed.), *ss.* 194, 207, *et seq.*

 3. The objection that the action cannot be maintained because the promise was not made to the plaintiff individually is not well taken. The promise was to pay distinct sums to distinct payees, thus creating several and not joint interests, for which separate actions only will lie. The fact that most of the workmen were present when the promise of Reed was made, did not make it any less a promise to each of them than it would have been had it been made to each separately, or if all of them had been named specifically.

The objection that the promise was not "for a specific sum, but for an uncertain, unliquidated amount, due to an indefinite number of persons," is equally untenable. That is certain which may be rendered certain, is an elementary maxim of universal application in the construction of contracts. Here the time was definite, and the persons to be paid embraced a certain class only; hence, to ascertain the amount due to each only required the simple process of multiplying the price per day by the number of days' work performed, both of which were capable of being defined and limited.

So, too, is the objection that no demand was made before suit. The declaration contains the general allegation, "yet, though often requested," etc., but whether a specific demand was in fact made does not appear, and is of no consequence. The promise relied on was not, if a third person did not pay a certain sum of money, to pay the same on a certain day, on request, nor was it a promise to one person to pay his debt to another who did not participate in the arrangement, but it was a direct agreement with the plaintiff personally to pay him a certain debt founded solely on a consideration moving from him alone to the promisor. No specific demand can be required in such a case, and a general allegation, like that in the declaration, is sufficient.

In support of the three objections last considered, the defendants have called special attention to the cases of *Butterfield* v. *Harts-*

*horn,* 7 N. H. 349, *Warren* v. *Batchelder,* 16 N. H. 587, *Lang* v. *Henry,* 54 N. H. 57, and *Dow* v. *Clark,* 7 Gray 198; but it will be found on examination that they have no application to this case, because in all of them the suits were brought on a promise made to third persons for the plaintiff's benefit, and under an arrangement in which they took no part, and in which no consideration moved from them.

4. The arrangement as to putting the agreement in writing was not an essential part of the agreement itself.   The finding of the referee, that the agreement became complete on the acceptance of the defendants' proposition, discloses no error in law.

5. The remaining objection is, that it was incumbent on the plaintiff to show the assent of Reed's firm to his promise.   But as it was made in respect of the regular business of the partnership, and in a matter clearly within its scope, the objection requires no consideration.

*Judgment for the plaintiff.*

SMITH and CLARK, JJ., did not sit: the others concurred.