Merrimack,  }
Dec., 1898. }

### PAPHRO D. PIKE CO. *v.* BATY.

The testimony of an agent is competent to prove his authority.

Certain evidence considered sufficient to warrant a finding that one who assumed to contract in the name of a corporation was authorized to act in its behalf.

Where a case is taken from the jury upon an agreement that there shall be judgment for the defendant if the plaintiff's motion for direction of a verdict should be denied, the defendant is entitled to judgment if there is competent evidence from which a jury might find in his favor.

ASSUMPSIT, for goods sold and delivered. Set-off, for labor and materials furnished. The plaintiffs were organized under the general laws of Massachusetts in 1895, as a corporation located in Boston, with a capital of $10,000, for the purpose of manufacturing and dealing in plumbers' materials and supplies, and acquiring patent rights and real estate as they might desire for the business. Theodore A. Peart, Fred H. Rounds, and Paphro D. Pike were the directors of the corporation in the latter part of 1896 and the early part of 1897; and Pike was the

president until January 16, and the treasurer until February 25, 1897, when he resigned and was succeeded by M. W. O'Brien. Among the prescribed duties of the president was that of exercising a general supervision of the company's affairs. Subject to exception, Pike testified that he alone had the general management of the company's business; and the defendant testified that Pike informed him that he was president, manager, and treasurer of the corporation, and substantially all there was to it. At a meeting of the directors held November 7, 1896, it was unanimously voted "to approve the management of the business as managed by Mr. Pike, and to continue on the same general lines for the present and at the same store."

December 11, 1896, Pike, as trustee, made an agreement with the assignee in insolvency of the Amsden estate, by which he acquired an option for sixty days to purchase the factory buildings, machinery, tools, and other personal property belonging to the estate, situated in Concord in this county, and the right to occupy the property in the meantime as tenant at will, for the purpose of making repairs and improvements. In securing the option, Pike stated that he represented the plaintiffs, but wanted the option to run to himself as trustee, as he was going to issue bonds. He paid $500 at the time of making the agreement, which was to be allowed toward the price if the purchase was completed. By an agreement recorded in the city clerk's office, December 29, 1896, Pike, Rounds, O'Brien, Patrick Troy, and the defendant formed a corporation for the same purposes as those of the Massachusetts corporation, with a capital of $100,000, located in Concord, to be known as the Paphro D. Pike Company. Pike and the defendant were the only persons present at the meeting when the corporation was organized, and the defendant acted as clerk of the meeting. He testified, subject to exception, that he signed the articles of association and acted as clerk merely to accommodate Pike, who represented that the proceeding was a reorganization of the Massachusetts corporation in New Hampshire. At a meeting of the stockholders of the Massachusetts corporation held January 17, 1897, all the stock being represented, it was unanimously voted "to sell to the new Paphro D. Pike Company, organized under New Hampshire laws, all the stock and assets of every kind of the Paphro D. Pike Company of Massachusetts, for $10,000 in stock of the new company, the said new Paphro D. Pike Company to assume all the liabilities of every kind of the old company."

There was evidence tending to show that in December, 1896, Pike, representing that he was acting for the plaintiffs, employed the defendant, who was a plumber and steam-fitter, to repair the plumbing and steam-fittings in one of the Amsden buildings, and agreed to pay therefor in the plaintiffs' goods;

that the goods named in the plaintiffs' specification, and the labor and materials named in the defendant's set-off, were furnished under the agreement, and all prior to February 21, 1897,— many of the goods being used in making the repairs aforesaid; that the defendant had never bought goods of the plaintiffs before, and would not have done so at this time but for this contract; that it was expected that the building in which the repairs were to be made would be occupied for manufacturing purposes by a company to be organized in New Hampshire, into which the Massachusetts company would be merged, and the defendant was so informed; and that the stockholders of the latter corporation knew of the option, and that the repairs were being made as early at least as the meeting of January 17, 1897. The bills sent by the plaintiffs to the defendant when the goods were shipped contained this entry: "Paphro D. Pike, Treasurer." The defendant also put in evidence, subject to the plaintiffs' exception, a letter from Pike to him, dated January 24, 1897, written upon a sheet having at the head, in print, the plaintiffs' card with this memorandum: "Paphro D. Pike, President and Manager"; also two letters to the defendant, signed "Paphro D. Pike Company, F. H. Rounds," dated Boston, March 11, and April 9, 1897, respectively, demanding payment of their account, and one letter dated March 11, 1897, acknowledging the receipt of the defendant's bill against them and stating that they had nothing to do with it, all written upon sheets having engraved in the top margin the words, "Factory at Penacook, N. H.," with a picture of the Amsden buildings underneath, and the words, "Paphro D. Pike Company, Manufacturers of Plumbers' Specialties," etc. The defendant also testified, subject to exception, that Pike borrowed money of him and gave him in payment a check upon a Boston bank, drawn by Pike as treasurer of the plaintiff corporation, which was paid. One of the defendant's witnesses testified, subject to exception, that, three or four days before the option was out, O'Brien, with a Mr. Dickinson and a Mr. Champion, called on the assignee and said they were the Paphro D. Pike Company and were ready to take the property as Pike had agreed, Pike having gone out of the company; that the assignee declined to make the conveyance until after the option had expired, but then conveyed it to Dickinson, giving credit for the $500 paid by Pike.

O'Brien testified that he was a member of the firm of Troy Brothers & Co.; that he knew of the option aforesaid when it was taken, and Troy Brothers & Co. loaned Pike the money to make the payment; that Pike requested him not to inform Peart of the transaction; that no one, aside from Pike, appeared in the transaction so far as he knew, unless Champion did; that when Peart found it out he forced Pike to resign as treasurer;

and that until then he (O'Brien) had no interest in the Paphro D. Pike Company.

At the close of the evidence on a trial by jury, the plaintiffs moved that a verdict be ordered in their favor for the amount of the specification, on the ground that no competent evidence had been introduced on which they could be charged for the items of the set-off. The parties agreeing that judgment should be rendered for the plaintiffs for the amount of the specification and interest if the motion ought to be granted, and for the defendant for the excess of the set-off above the specification, if the motion ought to be denied, the case was taken from the jury and reserved.

*Matthews & Sawyer*, for the plaintiffs.

*Sargent & Niles*, for the defendant.

CHASE, J: There was competent evidence before the jury from which they might properly have found that Pike was authorized by the plaintiffs to sell the goods named in the specification to the defendant, upon the terms alleged by him. One of the purposes of the corporation's existence was to manufacture plumbers' supplies, and it had authority to acquire real estate for its uses. Pike was one of its three directors, and was also its president, treasurer, and apparently general manager. January 17, 1897, its stockholders unanimously voted to sell all the stock and assets of the corporation to the new Paphro D. Pike Company, organized under the laws of this state, for $10,000 of the stock of the new company and an assumption by it of all the corporation's liabilities. The new corporation referred to was organized on or about December 29, 1896, by Pike, Rounds, O'Brien, one Troy, and the defendant, for the same purposes as the plaintiffs were organized, but with a capital of $100,000. Rounds was another of the three directors of the plaintiff corporation, and O'Brien succeeded Pike as its treasurer. The evidence tended to show that the defendant's connection with the new corporation was for Pike's accommodation, and was understood to be merely nominal. Some three weeks prior to that time Pike, as trustee, had secured an option giving him the right to purchase the Amsden property at any time within sixty days upon certain terms. In the following March and April, after Pike had ceased to be treasurer, the plaintiffs, in their correspondence with the defendant as to the claims in suit, used letter-heads bearing an engraved card designating the corporation as "Manufacturers of Plumbers' Specialties," and a picture of the Amsden buildings under the words, "Factory at Penacook, N. H." It would be a natural inference from all this testimony that at some

time prior to January 17 the corporation formed the purpose to engage in the manufacture of plumbers' supplies, and that the organization of the new corporation and the acquisition of the Amsden property were steps taken in executing that purpose. The corporation would necessarily act through its officers or agents, and the jury might think that no one would be more likely to be clothed with authority for the purpose than the person who occupied the fourfold relation to it of director, president, treasurer, and general manager, and whose influence at the organization of the corporation had been such as to cause it to take his name. This testimony tended to corroborate the statements made by Pike to the assignee of the Amsden estate while negotiating for the purchase of the manufacturing plant, and to the defendant when he was employed to make repairs upon the same. If the jury found, as they reasonably might, that the plaintiffs authorized Pike to act for them in these matters, the representations made by him in connection with his acts would be competent; for example, his representation to the assignee of the Amsden estate when he took the agreement in his own name as trustee that he represented the plaintiffs, but wanted the agreement in that form for a special reason. Moreover, Pike's testimony that he had the general management of the plaintiffs' business was competent. *Caldwell* v. *Wentworth*, 16 N. H. 318; *Kent* v. *Tyson*, 20 N. H. 121; *Goodwin* v. *Screw Co.*, 34 N. H. 378, 379; *Dow* v. *Epping*, 48 N. H. 75, 82. According to this view, the creation of the new corporation was in effect an amendment of the charter of the old corporation, increasing its capital stock, accompanied with a removal of the corporation to New Hampshire, rendered necessary by the determination to engage in the manufacture of plumbers' supplies and the consequent necessity for a manufacturing plant. One purpose of the plaintiffs' organization being to manufacture such supplies, they had authority to increase their capital and change their location to carry the purpose into effect, and might do it by promoting the formation of a new corporation instead of amending their old charter, — at least, if all the stockholders favored the plan, as they did in this case. The engraved letter-heads justify an inference that the Amsden property had been acquired by or for the use of the plaintiffs in some way. But whether actually acquired, or not, there was competent evidence before the jury of an attempt by the plaintiffs to acquire it. The repairs upon the property appear to have been a mere incident in the promotion of the main purpose. Whoever was to have the property desired to have it in suitable condition for use at a date as early as practicable. That there was testimony in conflict with these views does not affect the question before the court. If the case had gone to the jury, it would have been necessary for them to sift the

truth from the conflicting testimony and decide the case according to the facts as found by them. But the plaintiffs' motion to direct a verdict in their favor simply raised the question whether there was competent evidence before the jury from which they might properly find for the defendant. *Dailey* v. *Blake*, 35 N. H. 29; *Hazelton* v. *Batchelder*, 44 N. H. 40; *Caverly* v. *Balcom*, 55 N. H. 566. As there was such evidence, by the agreement of the parties, there must be

*Judgment for the defendant.*

PARSONS, J., did not sit: the others concurred.