Grafton,  
April 6, 1915.

### AUGUSTUS C. ATTO *v.* CHARLES G. SAUNDERS.

Where a contract made by an agent is within the apparent scope of his authority, the principal is bound thereby in favor of third persons having no actual knowledge of express limitations of the agency.

The "apparent scope" of an agent's authority is that authority which a reasonably prudent man, induced by the principal's acts or conduct, and exercising reasonable diligence and sound discretion under the circumstances, would naturally suppose the agent to have.

In an action to enforce a contract of guaranty, evidence that an agent in general charge of lumbering operations for an absentee principal, having engaged for the hauling of logs, subsequently guaranteed payment for teams furnished by the plaintiff, under an agreement which authorized retention of the contractor's earnings for the satisfaction of the claim, warrants a finding that the plaintiff might reasonably have assumed that the contract on which he relied was one which the agent had power to make in behalf of his principal.

A guaranty which is, in a practical sense, a contract for the benefit of the guarantor in the prosecution of his business is not within the statute of frauds.

The fact that a general agent in charge of lumbering operations did innumerable acts in that capacity warrants the inference that he was held out as having power to contract with reference to a detail of the work, for the apparent benefit of his principal.

ASSUMPSIT, upon a contract of guaranty. Trial by jury and verdict for the plaintiff. Transferred from the September term, 1914, of the superior court by *Pike*, C. J.

The defendant, doing business under the name of the Livermore Mills, was engaged in lumbering operations in Livermore in the winter of 1912–13. James C. Donahue was the foreman in charge of the work, the defendant living in Boston and not being present at the mills much of the time. December 3, 1912, Donahue employed Andrew W. Chesley to haul a large lot of logs to the mills at a certain price per thousand, the contract being signed by Chesley and Donahue. About this time one Martin became interested in the contract as partner or agent of Chesley. Some time in December, Martin attempted to engage teams and drivers of the plaintiff to work on the job, but the plaintiff refused to put his teams on the work for Chesley & Martin without a guaranty of payment by the defendant. Thereupon Martin obtained from Donahue a written agreement as follows: "Livermore, N. H., Dec. 28, 1912. Livermore Mills Co. agree to Pay A. C. Atto the amt due for Labor the

20 of Each Month By order of Andy Chesley. [signed] J. C. Donahue." Martin mailed the agreement to the plaintiff, who upon the receipt thereof contracted with Chesley & Martin to furnish certain teams and teamsters for a certain compensation per day, and under this contract performed the work for which pay is sought in this suit. The defendant had not expressly authorized Donahue to guarantee the pay of men employed by contractors. February 20, 1913, the plaintiff received from Donahue $200 on account. Other facts are referred to in the opinion.

The defendant excepted to the denial of his motion for a directed verdict. The jury returned an affirmative answer to the following question, submitted to them at the defendant's request: "Was the writing under the date of December 28, 1912, a guarantee to pay the plaintiff all moneys afterward due and owing the plaintiff from Andy Chesley, irrespective of whether Andy Chesley gave his order for payment?"

*Drew, Shurtleff, Morris & Oakes (Mr. Oakes* orally), for the plaintiff.

*Robert W. Upton* (by brief and orally), for the defendant.

WALKER, J. The defendant takes the position that his agent, Donahue, had no express authority to bind him by a contract of guaranty, and that the evidence was insufficient to warrant the jury in finding by implication that he had authority to bind the defendant by the contract upon which the plaintiff's action is based. It may be conceded that a general agent has no power to enter into contracts of guaranty in behalf of his principal, not connected with the business of the agency, but it does not follow that he may not, in the reasonable prosecution of the business of the agency, make contracts with third parties not expressly authorized. If the contract is within the apparent scope of his authority, it is a general rule that he may bind his principal in favor of third parties having no actual knowledge of express limitations upon his authority. *Deming v. Railroad,* 48 N. H. 455, 472; *Smith v. Bank,* 72 N. H. 4, 9; *Flint v. Railroad* 73 N. H. 141.

If in making the contract with the plaintiff Donahue acted within "the apparent scope" of his authority, the defendant is bound. This expression is often used in cases of this general character as a test of the principal's liability. Of course, it presents a question of

fact and is not susceptible of an exact or technical definition. It depends upon the circumstances of the particular case in which it is material. In general it has been defined as follows: "The apparent scope of an agent's authority is that authority which a reasonably prudent man, induced by the principal's acts or conduct, and in the exercise of reasonable diligence and sound discretion, under similar circumstances with the party dealing with the agent, and with like knowledge, would naturally suppose the agent to have." 1 Cl. & Sky. Agency, *s.* 208.

The case shows that Donahue was in charge of the lumbering operations of Saunders, who was doing the business under the name of the Livermore Mills at Livermore during the winter of 1912–13; that Saunders lives in Massachusetts and personally took no active part in the business at Livermore, but left it largely to the discretion of Donahue; and that Donahue, as the agent of the defendant, employed Chesley & Martin to draw a lot of logs to the mill, and afterward, at the request of Chesley & Martin, agreed to pay the plaintiff for the work he might do in hauling the logs to the mill as an employee of Chesley & Martin, or to guarantee the pay of the plaintiff, who would not work for the contractors without such an agreement. From this brief statement it is apparent that the contract related to the business Donahue was employed to do for the defendant, and that his purpose was to promote and facilitate the hauling of the defendant's logs. He was attempting to perform his duty as a general agent of the defendant. It does not appear that it would make any difference to the defendant whether all the money he sent to the agent to pay for hauling the logs was actually paid to the contractors, or whether a part of it was paid to their employee, the plaintiff, under a mutual agreement. It was at most but a mere detail of the agency which it would not be unreasonable for a prudent man to assume was authorized by the principal. If Donahue had kept back from the pay due to the contractors under their contract enough to satisfy the plaintiff's claim and paid it to him, as he was authorized to do by the arrangement with the contractors, the defendant would have suffered nothing. This fact tends to show that the so-called guaranty was not intended to jeopardize the rights of the defendant in any respect, but was deemed to be a convenient arrangement for the speedy prosecution of the work and the payment for the labor of hauling the logs. And it follows that the jury were justified in finding that it was reasonable for the plaintiff to assume that the agent had the power to make this con-

tract for and in behalf of his principal under the circumstances. After the contract was made Donahue did not carry it out. Here is where the difficulty arose. He did not protect the defendant, as he was bound to do, by holding back from the contractors the money due the plaintiff. But it is clear the plaintiff is not responsible for this neglect of the agent. If the contract had been that the defendant should guarantee the payment to the plaintiff of money due him from a perfect stranger, a somewhat different question would arise. In such a case it might be difficult to find any justification for the agent's act.

But it is urged that the finding of the jury in answer to the special question submitted to them, to the effect that the defendant under the contract was to pay the plaintiff for his labor "irrespective of whether Andy Chesley gave his order for payment," is unsupported by the evidence. The writing itself seems to be somewhat inexact and ambiguous in this respect. "Livermore Mills Co. agree to Pay A. C. Atto the amt due for Labor the 20 of Each Month By order of Andy Chesley. [signed] J. C. Donahue." Does this mean that Donahue as agent of the defendant agreed to pay the plaintiff only when he had Chesley's order for such payment, as the defendant claimed, or that upon Chesley's order or request, which was afterward given, he agreed to pay him on the 20th of each month? It is evident the brief and inartificial writing may be susceptible of either construction. The question, which construction is correct, was submitted to the jury, who from the circumstances attending the transaction (*Brown* v. *Whipple*, 58 N. H. 229, 233; *Pillsbury* v. *Elliott*, 56 N. H. 422, 425) expressly found in favor of the plaintiff's contention. His testimony in regard to the transaction and one or more conversations he had with Donahue have some tendency to show that the parties' intention was in accord with the finding of the jury. As a matter of law, it was supported by some evidence, although contrary to the evidence of the defendant. The weight of the conflicting evidence was for the jury.

The defendant raises the further question whether the written contract which has been found to be a guaranty satisfies the provisions of the statute of frauds. But since the guaranty was in a practical sense for the benefit of the guarantor in the prosecution of his business, it must be held on the authority of *Wills* v. *Cutter*, 61 N. H. 405, and *McDonald* v. *Fernald*, 68 N. H. 171, that this contention is unsound.

The court charged the jury upon the legal effect of the defendant

"holding Donahue out" as his agent, and the defendant excepted
to the charge in this respect upon the ground that there was no
evidence to which it was applicable. The fact, however, that
Donahue was the defendant's general agent in conducting the lum-
bering operations at Livermore and that he did innumerable acts in
that capacity would authorize the inference that he was held out as
having power to bind the defendant in reference to a detail of the
work which was entered into for the apparent benefit of the de-
fendant.

The defendant also excepted to the refusal of the court to charge
that if Martin, who was active in procuring Donahue to make the
contract, was acting as the agent of the plaintiff, his knowledge that
Donahue had said to him that he had no authority to guarantee the
plaintiff's pay would be notice to the plaintiff of such limitation of
the agency. The mere fact that Martin, who was a partner or agent
of Chesley, the contractor, desired to have the plaintiff work for
them, and the fact that, when the latter refused to do so without the
guaranty of the defendant, Martin thereupon induced Donahue to
sign the contract, are not evidence that he was acting for the plain-
tiff or that the plaintiff understood that he was. He could not
consistently be the agent of the plaintiff in inducing the plaintiff to
enter the employ of himself and Chesley, and there is no evidence
that he attempted such a task. Both of these exceptions are over-
ruled.

Subject to the defendant's exception, the plaintiff was permitted
to testify that after he had begun work Donahue told him that if
the plaintiff could get along without the money that was due him,
he would like to have him wait until the logging was finished, and
that everything would be all right. This bore directly on the
question of the defendant's liability under the contract, and as it
was made by the agent during the progress of the work and for the
purpose of inducing the plaintiff to continue his services under the
contract, it was clearly competent. *Pemigewassett Bank* v. *Rogers*,
18 N. H. 255, 259; *Paphro D. Pike Co.* v. *Baty*, 69 N. H. 453, 457;
*Guerin* v. *Company*, 70 N. H. 133.

The defendant took exception to testimony of the plaintiff relating
to a conversation he had with Donahue, when the latter said he
wished he "had got hold of you earlier before I let the job to Martin
& Chesley." As it was conceded that Donahue was the defendant's
agent in employing Martin & Chesley, this remark, tending perhaps
to prove the agency, was entirely harmless.

Another exception relates to a conversation preliminary to the contract, between the plaintiff and Martin, when the latter said, in substance, that he and Chesley had taken the logging job of the defendant. The plaintiff replied that he would not engage to work for them unless his pay was guaranteed by the defendant. As this talk was to some extent explanatory of the subsequent written agreement and was a circumstance leading up to it, its admission in evidence for that purpose was not error.

*Exceptions overruled: judgment on the verdict.*

All concurred.