Grafton,
May 1, 1928.

BOSTON & MAINE RAILROAD *v.* NORTHERN RAILROAD *& a.*

*Jewett & Jewett* (Mr. *Stephen S. Jewett* orally), for the plaintiff.

*Benjamin W. Couch, Winthrop Wadleigh* and *Robert W. Upton* (*Mr. Upton* orally), for the defendants.

PEASLEE, C. J.   This proceeding is brought against the Northern railroad and its officers and directors.  But as the conclusion reached concerns the railroad only, it is spoken of herein as the defendant.

The clause in the lease, under which the present controversy arises, reads as follows: ". . . at the expiration or earlier termination of this lease it will return said demised road and property, with all equipment thereof, to the party of the first part, in as good order and condition as the same now are, without diminution or depreciation in any respect; provided, however, that in case any additions or improvements to said railroad or property shall have been made by the party of the second part, at that time, with the written consent of the party of the first part, the same shall be paid for by the party of the first part, at the value thereof, at the time this lease shall expire or be terminated."

The plaintiff alleges the making of additions and improvements, a demand for consent thereto and a refusal of compliance by the defendant. The issue thus presented is whether the defendant is under a legal duty to consent. The question of duty to pay will not arise until the termination of the lease. Unless the plaintiff shows a present right to demand consent, it is not entitled to any relief at this time. Consequently, the alleged duty to pay when the lease is terminated has not been considered, except in so far as the question is involved in reaching a conclusion upon the issue as to consent.

This written contract is to be construed according to the recognized rules governing the interpretation of writings. "The intention to be ascertained is that expressed by the parties by the language they used. What did they mean by the words employed? Or, to follow Wigmore's suggestion, what is the 'sense' of the language? 4 Wig., Ev., s. 2459; *Kendall* v. *Green*, 67 N. H. 557, 558; *Stratton* v. *Stratton*, 68 N. H. 582, 585. In the language of Judge *Ladd*, 'the question . . . is not what the parties intended to do, but what did they do? What intention did they express in the deed?' *Pillsbury* v. *Elliott*, 56 N. H. 422, 425; *Gill* v. *Ferrin*, 71 N. H. 421." *Lancaster & Jefferson &c. Co.* v. *Jones*, 75 N. H. 172, 174.

The agreement is plain upon its face. It provides for the return of the property according to the usual duty of a lessee. Recognizing the general rule that non-removable additions and improvements become the property of the lessor without duty to make compensation (*Rand* v. *Dodge*, 17 N. H. 343; *Guay* v. *Kehoe*, 70 N. H. 151), provision is made for compensating the lessee therefor, under certain conditions. Unless these conditions have been fulfilled the lessor will have no duty to pay.

The conditions stated are free from any ambiguity. The additions or improvements must have been made "with the written consent"

of the lessor. The lease provides no other test. It contains nothing suggestive of a duty so to consent. The provision is plain and straightforward. It can be read in but one way.

There is nothing peculiar or unusual in such a provision. It is constantly used in insurance contracts, and its validity has been treated as unquestionable. *Sargent* v. *Insurance Co.*, 82 N. H. 489; *Gale* v. *Insurance Co.*, 41 N. H. 170; *Dube* v. *Insurance Co.*, 64 N. H. 527; *Blanchard* v. *Insurance Co.*, 33 N. H. 9. A like situation has prevailed as to leases. *Boston, Concord &c. R.R.* v. *Railroad*, 65 N. H. 393. This leading case, decided the year before the present lease was made, must have been well known to the attorneys for the parties to this controversy. "This is a valid stipulation, inserted for the benefit of the lessors." *Emery* v. *Hill*, 67 N. H. 330, 332.

In answer to these propositions, the plaintiff says that the parties must have contemplated betterments of the property by the lessee, which were to be paid for by the lessor, and that it is the lessor's duty to give consent to all reasonable betterments. No provision of the lease has been referred to as imposing the alleged duty. It is sought to be inferred from the general situation disclosed by the lease, and the alleged equitable character of the plaintiff's contentions.

The position taken is that all reasonable additions and improvements must be assented to and accounted for. It is evident that if the plaintiff is to prevail at all, it must be to this extent. If something other than the will of the lessor determines the right of the parties, the substitute must be something capable of legal ascertainment and remedial application. If a judicial order for consent is to be made, it must specify the boundaries of the action ordered.

A stipulation that the lessor or its agents should pass judgment on whether it should account for certain betterments, would be making the defendant a judge in its own cause. "As it has always been held that no man can be a judge in his own cause, such agreements have never been considered to be binding." *Smith* v. *Railroad*, 36 N. H. 458, 490. "It can hardly be said that such power of deciding one's own cause can be conferred at all." *Janvrin* v. *Exeter*, 48 N. H. 83, 86. The plaintiff must establish a duty to give consent. A provision for the exercise of judgment in the matter would not be sufficient.

The proposition advanced is that there is a duty to account with the plaintiff from time to time, and that the defendant has no right to withhold consent. It is manifest that any such interpretation would be a wide departure from the explicit provision in the lease.

It not only adds terms not found in the writing. It also runs counter to the thought expressed.

The conditional form of this clause is weighty evidence of the intent of the parties. It envisages a situation where no additions or improvements are to be paid for. The provision that in case of improvements with consent there is liability, plainly implies that there is no liability for improvements made without consent. The condition refers to compensation, and not to the existence of the improvements. It is not an agreement that when improvements are made consent shall be given; but that when consent shall be given liability shall follow. The parties must have contemplated that it would be necessary to add betterments. No one would think that a railroad could be operated for a century without them. Knowing that these expenditures must of necessity be made, the stipulation is that they shall be paid for in case they were made with the written consent of the lessor. There is no suggestion that the lessee will not make them without consent, or that if they are needed it shall be the duty of the lessor to give consent.

If a general obligation had been intended, it would have been put in direct and positive form. "All necessary or reasonable additions and improvements, together with those ordered by public authority, shall be consented to and accounted for." Such an undertaking would impose a duty. A purpose to create such an obligation would be very easy to express. If it had existed, the matter would not have been stated conditionally.

If the purpose had been to require the lessor's consent, in order to preserve evidence for an accounting at a remote time, the duty to express such consent would have been imposed in positive terms. It is entirely outside the realm of probability to infer that skillful draftsmen would leave such an obligation to be implied from the language used here.

The subject was an important one. According to the plaintiff's specification the expenditures made in less than a third of the term of the lease were over a million dollars. An undertaking of such magnitude as the plaintiff claims would not have been left to be inferred from a clause which fails to state any obligation.

The form of expression used indicates that the contemplated procedure involved negotiation and procurement of consent before the work was done. Improvements "made . . . with the written consent" do not include those made without consent. While such a provision might not prevent a recovery in case consent were illegally

withheld (*Smith* v. *Railroad*, 36 N. H. 458) its form is significant as tending to support the idea that the lessor's will as to the matter was to be exercised.

The plaintiff's position reduces the lessor's right to a mere withholding of consent in case of unreasonable betterments. It treats the approval as being nothing more than an architect's certificate that work has been done according to contract. The term used is not an apt one to express such a purpose. The plaintiff is urging a duty to approve, while the contract speaks of consent. Approval implies that a certain contractual standard has been complied with, and that such fact is to be certified. Consent indicates a situation where the contract may be varied or added to by some act of the parties. The former relates to the execution of the contract, the latter to making a new agreement.

The lease imposed upon the lessee the duty to make all needed additions and improvements. *Pierce* v. *Railroad*, 51 N. H. 590; *State* v. *Railroad*, 58 N. H. 410; *Boston, Concord &c. R.R.* v. *Railroad*, 65 N. H. 393. By taking an assignment of the lease the plaintiff took over the defendant's public utility duty, and thus became bound to perform the incidental obligations to the public. This duty does not rest upon the legal imposition in favor of the public alone. It was undertaken as a duty to the lessor. The lease provides that the lessee "will during the term of this lease operate said demised railroad according to all requirements of law, fulfilling all the duties and obligations of the party of the first part in relation thereto in the same manner as if said demised road remained in the possession and control of the party of the first part."

Having thus undertaken the duty to make necessary additions and improvements, the lessee saw fit to stipulate for reimbursement only as to those made with the lessor's written consent. If there had been a purpose to require consent as the plaintiff contends, the fact that the lessee had put itself in a position where it could not refuse to make necessary betterments, if the lessor refused consent, would be an added reason why astute lawyers would express the duty to consent in unequivocal language. The lessee being deprived of power to force consent through a refusal to act without it, would see to it that any promise of consent was plainly expressed.

The plaintiff has no ground to avoid the plain meaning of the language set down in the contract. As those unskilled in business are entitled to have their known limitation of understanding considered (*Watson* v. *Company*, *ante*, 200), it must be equally true that when

both sides are represented by skillful lawyers their situation is to be taken into account in like manner. It is unquestionable that such were the circumstances under which the terms of this lease were agreed upon. It is a case where "their purpose was expressed with professional accuracy and skill." *Boston, Concord &c. R.R.* v. *Railroad*, 65 N. H. 393, 457.

The claim of great equity in the plaintiff's position is not established by the record. In the first place, the law is against it. A tenant is not entitled to be reimbursed for improvements. And in the case of a lease of this character, and which still has more than sixty years to run, it is entirely impossible to foresee what the situation will be at its termination, or to ascertain which party will then appear to have the better of the bargain.

The clause is not left without meaning by the conclusion that it does not make consent compulsory. It provides for the time when payment shall be made, and the method of valuation, if consents are given. It may also have been thought likely to serve other useful ends. The provision for written consent might afford a needed protection against a claim of assent to be inferred from a course of conduct. Advance protection against such a claim might not be deemed an unreasonable precaution.

Whether, if the contract were to be construed according to the plaintiff's claims, this proceeding could be maintained, is a question upon which no opinion is intended to be expressed. See *Smith* v. *Railroad*, 36 N. H. 458.

*Case discharged.*

SNOW and BRANCH, JJ., did not sit: the others concurred.